UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TERESA HELEN WOODWORTH,

                Plaintiff,

-vs-

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

**No. 6:17-CV-06216 (MAT)**
**DECISION AND ORDER**

---

## I. Introduction

Represented by counsel, plaintiff Teresa Helen Woodworth ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of defendant the Acting Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

## II. Procedural History

Plaintiff protectively filed an application for DIB on December 13, 2011, alleging disability as of November 1, 1998 due to fibromyalgia, tendonitis, and sleep apnea. Administrative Transcript ("T.") 113-119, 150, 153. Plaintiff's application was

initially denied. T. 67-71. At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") John P. Costello on June 17, 2013. T. 8-9, 28-65. On August 19, 2013, ALJ Costello issued an unfavorable decision. T. 13-23. On November 25, 2014, the Appeals Council denied Plaintiff's request for review. T. 1-6. Plaintiff instituted a civil action in this Court, and on December 18, 2015, this Court entered a Decision and Order remanding the claim for further administrative proceedings. *See Woodworth v. Colvin*, No. 6:15-CV-6041(MAT), 2015 WL 9255566 (W.D.N.Y. Dec. 18, 2015).

On remand, the Appeals Council vacated the ALJ's decision and remanded the matter for further consideration and development. T. 863-66. On November 14, 2016, Plaintiff appeared at a second hearing before ALJ Costello. T. 832-63. On February 6, 2017, ALJ Costello issued a second unfavorable decision. T. 808-31. This action followed.

**III. The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520, 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on September 30, 2004. T. 813. Accordingly, the remainder of the ALJ's decision was limited to determining whether Plaintiff was

disabled through September 30, 2004, the date last insured. T. 812.

At step one of the five-step sequential evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from the alleged onset date through the date last insured. T. 814. At step two, the ALJ found that, through the date last insured, Plaintiff suffered from the severe impairments of fibromyalgia, depressive disorder, epicondylitis, tendonitis in her right wrist and thumb, carpal tunnel syndrome, and obesity. *Id*.

At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. *Id.* The ALJ particularly considered Listings 1.02, 11.04B, 11.14, and 12.04 in reaching this determination. T. 814-15.

Before proceeding to step four, the ALJ determined that, through the date last insured, Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) with the following non-exertional limitations: can frequently bilaterally reach, handle and finger, and can perform only simple, routine tasks. T. 816.

At step four, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work. T. 823. At step five, the ALJ relied on the testimony of a vocational expert to conclude that, through the date last insured,

3

considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including office helper, sales attendant, and recreation aide. T. 824-25. Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. T. 825.

**IV. Discussion**

    **A. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation omitted). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the

Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

Here, Plaintiff argues that the ALJ erred in his consideration of treating physician Dr. John R. Andolina's medical source opinion. Plaintiff further argues that the ALJ's RFC finding was not supported by substantial evidence and that the ALJ erred in his assessment of Plaintiff's credibility. For the reasons discussed below, the Court finds these arguments without merit.

**B.  Consideration of Dr. Andolina's Opinion**

Plaintiff's first argument is that the ALJ failed, in direct contravention of this Court's prior Decision and Order, to properly apply the treating physician rule in assessing what weight to afford Dr. Andolina's opinion. Plaintiff particularly contends that the ALJ failed to identify good reasons for affording Dr. Andolina's opinion less than controlling weight. The Court disagrees.

Pursuant to the treating physician rule, when an ALJ declines to accord controlling weight to a treating physician's opinion, the ALJ "must consider various factor' to determine how much weight to give to the opinion[,]" such as "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist;  and (v) other factors brought to the Social Security Administration's attention

5

that tend to support or contradict the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation omitted). A corollary to the treating physician rule is the so-called "good reasons rule," which is based on the regulations specifying that "the Commissioner will always give good reasons" for the weight given to a treating source opinion. *Halloran*, 362 F.3d at 32 (internal quotation omitted); *see also Schaal v. Apfel*, 134 F.3d 496, 503-04 (2d Cir. 1998).

In this case, Dr. Andolina, Plaintiff's long-term primary care physician, completed a Fibromyalgia Residual Functional Capacity Questionnaire (the "RFC Questionnaire") related to Plaintiff on May 5, 2013. T. 654-63. According to the RFC Questionnaire, Plaintiff's symptoms included multiple tender points, nonrestorative sleep, chronic fatigue, muscle weakness/fatigue, vestibular dysfunction, numbness and tingling, anxiety, depression, carpal tunnel syndrome, and chronic Fatigue Syndrome. T.654. Dr. Andolina opined that Plaintiff was not a malingerer, and that emotional factors (including stress) contributed to the severity of her symptoms and functional limitations. T. 655. He stated that Plaintiff's pain was mild to moderate, and that the level fluctuated. *Id*. He further indicated that stress, fatigue, and "movement/overuse" were factors that would precipitate Plaintiff's pain. *Id*.

According to Dr. Andolina, Plaintiff's pain would constantly be severe enough to interfere with the attention and concentration

needed to perform even simple work tasks. *Id*. However, Dr. Andolina also opined that Plaintiff was capable of performing low stress jobs. *Id*.

Dr. Andolina limited Plaintiff to sitting for no more than 30 to 45 minutes at a time; standing for 10 minutes at a time, sitting at least 6 hours total in an 8-hour workday, and standing/walking less than 2 hours in an 8-hour workday. T. 656. He further opined that she must be able to shift positions at will, take 1-2 10-minute unscheduled breaks, and walk around every 15 minutes for 5 minutes. *Id*. According to Dr. Andolina, Plantiff could occasionally lift less than 10 pounds, but could never lift amounts heavier than 10 pounds. T. 657. Dr. Andolina also opined that Plaintiff had "significant" limitations in reaching, handling, or fingering with her right hand. *Id.* The RFC Questionnaire indicates that Plaintiff is likely to had good days and bad days and that she would need to be absent from work about three days per months. *Id*. Dr. Andolina indicated that Plaintiff's fibromyalgia "date[d] back to before 2005," but that it was "unknown" whether Plaintiff's symptoms and limitations had existed since 1998. *Id*.

Dr. Andolina then was subsequently asked to complete an RFC Questionnaire Clarification which he did on July 8, 2013, noting that the limitations he assessed in the original RFC Questionnaire had been present since at least September 30, 2004, but that those limitations had *not* been present since at least November 1, 1998. T.768.

7

In his original unfavorable decision, the ALJ gave Dr. Andolina's opinion "little weight," noting that it was written nine years after the expiration of Plaintiff's insured status and stating without further elaboration that it was "not supported by the evidence from the relevant time period." T. 20. In its Decision and Order remanding the case for further proceedings, the Court found that the ALJ had failed to comply with the treating physician rule with respect to Dr. Andolina's opinion because he had not adequately identified "good reasons" for affording it less than controlling weight. *Woodworth*, 2015 WL 9255566, at *4. The Court did not, however, find that Dr. Andolina's opinion was entitled to controlling weight. Instead, it stated that if, on remand, "the ALJ elects to discount Dr. Andolina's opinion, he must explicitly consider the required factors and provide 'good reasons' for rejecting it." *Id*.

On remand, in his second decision, the ALJ again gave Dr. Andolina's opinion "little weight." T. 820. The ALJ explained that (1) the RFC Questionnaire was a "checklist form with no little to no explanation given," (2) Dr. Andolina's medical records from the relevant period were inconsistent with the RFC Questionnaire, (3) there was a significant gap in Dr. Andolina's treatment of Plaintiff, from March 2003 to March 2004, (4) the RFC Questionnaire was written in 2013, nine years after the relevant time period expired, (5) the other medical evidence of record was inconsistent with Dr. Andolina's opinions, and (6) Dr. Andolina's opinions

8

relate to orthopedics and rheumatology, neither of which is his area of speciality. T. 820-21.

Contrary to Plaintiff's argument, the Court finds that the ALJ complied with this Court's Decision and Order and assessed Dr. Andolina's opinion in accordance with the treating physician rule. The ALJ's stated reasons for according Dr. Andolina's opinion less than controlling weight are adequately identified and well-supported by the record.

As the ALJ discussed in detail in his second decision, the highly restrictive limitations set forth in the RFC Questionnaire are unsupported by Dr. Andolina's contemporaneous treatment records and the other medical evidence of record. During the relevant time period, Plaintiff reported to Dr. Andolina that she was capable of performing such physically demanding activities as snow shoveling, sledding, and cleaning out her basement. T. 721, 726, 760. In April 2002, Plaintiff told Dr. Andolina that her elbow pain was "mild" and in October 2003, she reported to her acupuncturist that her fibromyalgia pain was "mostly gone." T. 651, 747. Moreover, Dr. Andolina prescribed only conservative treatment for Plaintiff's impairments, including over-the-counter pain medication, and Plaintiff failed to follow his recommendation that she see a rheumatologist. T. 737, 818, 821. An ALJ may properly reject a retrospective opinion from a treating physician where it is unsupported by his contemporaneous treatment records and the other medical evidence of record. *See Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (ALJ properly declined to afford controlling

9

weight to treating physician's opinion rendered four years after the date last insured where it was unsupported by contemporaneous treatment records and inconsistent with the other medical evidence of record).

The ALJ also properly found that Dr. Andolina's opinion was inconsistent with Plaintiff's self-reported work activities. As the ALJ noted, Plaintiff continued to work both before and after her date last insured. This including working as a receptionist for 30 hours per week while also being paid for caring for mother for 4 to 5 hours per day. T. 847-48. It was not error for the ALJ to take this into account when assessing Dr. Andolina's opinion. *See Hoffman v. Colvin*, No. 14-CV-9089 (RA), 2016 WL 1275660, at *2 (S.D.N.Y. Mar. 31, 2016) (evidence that Plaintiff was still working after alleged onset date contradicted treating physician's opinion that Plaintiff was disabled).

The ALJ also did not err in taking into account the year-long gap in Dr. Andolina's treatment of Plaintiff, from March 2003 to March 2004, or the fact that Dr. Andolina's opinions related to areas outside his specialty. The regulations expressly instruct an ALJ to taken into account the frequency of treatment and the physician's specialty. *See Halloran*, 362 F.3d at 32.

It was further appropriate for the ALJ to afford less weight to Dr. Andolina's opinion because it was merely a form checklist without additional elaboration. Courts in this Circuit have consistently held that "lack of supporting detail and/or objective findings provides a . . . reason for affording [an] opinion less

weight." *Wright v. Colvin*, No. 5:12-CV-0440 (MAD/VEB), 2013 WL 3777187, at *15 (N.D.N.Y. July 17, 2013) (citing 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3)) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *see also Halloran*, 362 F.3d at 31 n. 2 (describing standardized form checklist as "only marginally useful for purposes of creating a meaningful and reviewable factual record"); *Llorens-Feliciano v. Astrue*, No. 6:11-cv-924 (GLS), 2012 WL 6681772, at *3 (N.D.N.Y. Dec. 21, 2012) ("'Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)). Finally, with respect to the ALJ's observation that Dr. Andolina's opinion was rendered nine years after the relevant time period, as the Court explained in its prior Decision and Order, that fact standing alone is not a good reasons for affording less than controlling weight. *See Wenk v. Barnhart*, 340 F. Supp. 2d 313, 322 (E.D.N.Y. 2004) (treating physicians' retrospective opinions also entitled to deference under the treating physician rule). However, in light of the other numerous good reasons identified by the ALJ, discussed in detail above, the Court does not find that the ALJ discounted Dr. Andolina's opinion on this basis alone. Accordingly, the Court does not find that the

ALJ's comments about the retrospective nature of the opinion constitute a reversible error.

For the reasons discussed above, the Court finds that the ALJ appropriately applied the treating physician rule in his second decision with respect to Dr. Andolina's opinion. Accordingly, the Court finds no basis for remand of this matter.

### C. The ALJ's RFC Finding is Supported by Substantial Evidence

Plaintiff's next argument is that the ALJ's RFC is not supported by substantial evidence. In particular, Plaintiff contends that the ALJ rejected the medical evidence of record and formulated his RFC finding based on his own lay opinion. Again, the Court disagrees.

An ALJ assessing a disability claim is required to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). The ALJ's RFC finding need not "not perfectly correspond with any of the opinions of medical sources." *Id.*; *see also Rosa v. Callahan*, 168 F.3d 72, 29 (2d Cir. 1999) ("the ALJ's RFC finding need not track any one medical opinion"); *Breinin v. Colvin*, No. 514CV01166LEKTWD, 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

In this case, the medical evidence of record does not support any functional limitations greater than those assessed by the ALJ.

As the ALJ noted, Plaintiff engaged in relatively little medical treatment during the relevant time period. T. 817. Moreover, the treatment records from that time reflect only minor physical impairments. For example, Plaintiff's treating orthopedist, Dr. Michael J. Klotz, noted in June 1999 that physical therapy had significantly improved Plaintiff's right arm function, resulting in decreased pain and increased strength. T. 781. Dr Klotz noted further improvements in July 1999 and stated that he expected Plaintiff's symptoms to eventually "resolve[] completely." T. 782. In October 1999, Dr. Klotz examined Plaintiff and noted that she had a full active range of motion in her elbows bilaterally. T. 785. Dr. Klotz opined that Plaintiff had reached her "maximum medical improvement" and that she had experienced a 15% loss of use in each of her elbows. *Id*. In December 1999, Dr. Klotz noted that Plaintiff was able to manage her symptoms, even while using a computer and engaging in vocational retraining. T. 786. By February 2000, Plaintiff had completed her vocational retraining and Dr. Klotz noted that she was "waiting for job placement." T. 788. Dr. Klotz indicated that Plaintiff could contact him with any concerns she had about a job offer and that he would tell her whether he felt it was within her capabilities. *Id*. It is therefore clear that in February 2000, Dr. Klotz felt that Plaintiff was capable of some form of employment. Indeed, additional notes from Dr. Klotz indicate that Plaintiff returned to "keyboarding" 20 hours per week, but that she found it too stressful, and did not continue when the job was made full-time.

13

T. 790-791.  Instead, Plaintiff began working providing home care for her mother.  T. 791.

Dr. Andolina's records similarly show relatively minor impairments during the relevant time period.  With respect to Plaintiff's physical impairments, physical examinations by Dr. Andolina and his physician's assistant ("P.A.") John Oliphant repeatedly showed that Plaintiff was healthy, in no apparent distress, and that her right arm was "basically normal," though she did have some point tenderness.  *See, e.g.,* T. 719, T. 720 (right arm was "relatively normal with no sign of visible pathology"), 721 (right elbow "appears normal" with some tenderness and no significant lateral epicondyle pain), 727 (Plaintiff had "no gross motor neurological deficits"), 731-32 (Plaintiff had "mild discomfort" when fully extending her elbow but had "good strength with resisted wrist extension).  P.A. Oliphant opined in April 1999 that Plaintiff needed only to avoid "strenuous work."  T. 723.  By April 2002, Plaintiff reported to Dr. Andolina that, other than a recent dog bite, she was "feeling better" and that her elbow pain was only "mild."  T. 747.  As noted above, Plaintiff was not seen by Dr. Andolina at all from March 2003 to March 2004.  T. 752-53.

With respect to Plaintiff's mental impairments, the record similarly shows only mild impairment.  Plaintiff does not appear to have ever sought treatment from a mental health counselor or psychiatrist, but did report feeling depressed to Dr. Andolina on several occasions.  In December 2000, Dr. Andolina prescribed Celexa, which did "an amazing job of helping [Plaintiff's] mood and

14

energy levels, and . . . also made her arm pain go away." T. 732-33. Unfortunately, Plaintiff developed an allergic reaction (a rash) to the Celexa and so she was prescribed Paxil. *Id*. Plaintiff stopped taking Paxil because she felt that was worsening her energy levels, and Dr. Andolina prescribed Wellbutrin. T. 735. Plaintiff reported that the Wellbutrin improved her energy levels and made her less depressed. T. 737. By June 2001, Dr. Andolina noted that Plaintiff's "depression is better." T. 739. However, Plaintiff subsequently indicated that she did not think the Wellbutrin was effective, and Dr. Andolina changed her prescription to Zoloft. T. 741. Plaintiff responded well to Zoloft and in October 2001 reported that her spirts were better and her elbow pain had improved. T. 743. In September 2002, Plaintiff reported that she had stopped taking her medications and that she had been depressed. T. 749. Dr. Andolina increased her Zoloft dosage. *Id*. Plaintiff does not appear to have had any further mental health intervention during the relevant time period.

The reports of the various consultative examiners in this case, while not directly related to the relevant time period, also further support the ALJ's ultimate conclusions. In June 2016, Dr. Rita Figueroa performed a consultative orthopedic examination of Plaintiff. T. 1071-1073. Dr. Figueroa's examination of Plaintiff was largely normal and Dr. Figueroa opined only that Plaintiff would have difficulty with activities requiring moderate exertion. T. 1073. Similarly, Dr. Adam Brownfeld perform a consultative psychiatric evaluation of Plaintiff on June 2, 2016,

15

and found that Plaintiff's psychiatric problems were not "significant enough to interfere with [Plaintiff's ability to function on a daily basis." T. 1065. Again, while these opinions were rendered after the relevant period and are therefore not directly related to Plaintiff's functioning at that time, they are also consistent with the ALJ's conclusions, and do not support a finding of a more restrictive RFC.

While the hearing process is non-adversarial, it is ultimately Plaintiff's burden to show that she was disabled during the relevant time period. *See Schauer v. Schweiker*, 675 F.2d 55, 60 (2d Cir. 1982)("the burden is on the claimant to prove disability throughout the period for which benefits are sought"). In this case, the medical evidence of record does not support any functional limitations for the relevant time period greater than those found by the ALJ. Accordingly, the Court finds no basis to alter or reverse the ALJ's RFC finding.

### D. Assessment of Plaintiff's Credibility

Plaintiff's final argument is that the ALJ erred in his assessment of her credibility. This argument lacks merit.

The Commissioner's regulations set forth a two-step process for evaluating symptoms such as pain, fatigue, weakness, depression, and nervousness. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms; if so, the ALJ "must then evaluate the intensity and persistence of [the claimant's]

16

symptoms" to determine the extent to which the symptoms limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). "[I]f a claimant's statements about his or her symptoms are not substantiated by the objective medical evidence, the ALJ must consider the other evidence and make a finding on the credibility of the individual's statements." *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996)). Ultimately, "[i]t is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

In this case, the ALJ found that Plaintiff was not fully credible. He explained that (1) Plaintiff's self-reported activities of daily living were inconsistent with her claims of total disability, (2) Plaintiff received conservative treatment which provided good relief of her symptoms, (3) Plaintiff was able to work after her alleged onset date and before her date last insured, and (4) Plaintiff's alleged symptoms were inconsistent with the medical evidence of record.

The Court finds no error in the ALJ's assessment of Plaintiff's credibility. The ALJ properly noted that Plaintiff's activities of daily living, which included such strenuous activities as shoveling snow, were inconsistent with her statements regarding her symptoms. It is well-established that a claimant's daily activities are an appropriate factor to consider in assessing

credibility. *See, e.g., Crowley v. Barnhart*, 220 F. Supp. 2d 176, 180 (W.D.N.Y. 2002).

A conservative pattern of treatment is also an appropriate factor to consider in assessing credibility. *See, e.g., Rivera v. Colvin*, No. 1:14-CV-00816 MAT, 2015 WL 6142860, at *6 (W.D.N.Y. Oct. 19, 2015) ("[T]he ALJ was entitled to consider evidence that [the claimant] pursued a conservative treatment as one factor in determining credibility[.]")(citation omitted); *Amoroso v. Colvin*, No. 13-CV-5115 SJF, 2015 WL 5794226, at *10 (E.D.N.Y. Sept. 30, 2015) (ALJ "properly considered [claimant's] daily activities . . . and her 'conservative' treatment . . . which both suggest that she is capable of performing sedentary work").

It also was not error for the ALJ to consider the inconsistencies between Plaintiff's testimony and the undisputed fact that she continued to work at near-full time levels after her alleged onset date. *See Dennis v. Berryhill*, No. 6:16-CV-6750-MAT, 2018 WL 488942, at *7 (W.D.N.Y. Jan. 19, 2018). Moreover, in assessing a claimant's credibility, an ALJ is instructed to consider whether his subjective claims of pain are "consistent with the medical and other objective evidence," *Wells v. Colvin*, 87 F. Supp. 3d 421, 431 (W.D.N.Y. 2015), which the ALJ did in this case.

The ALJ's conclusions regarding Plaintiff's credibility were based on appropriate considerations and supported by the record. Accordingly, the Court rejects Plaintiff's contention that remand is required on this basis.

**V. Conclusion**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 11) is denied. The Commissioner's motion for judgment on the pleadings (Docket No. 13) is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:  April 27, 2018
        Rochester, New York.